WHITE STAR BUS LINE, INC., peticionaria, *v.* LA CORTE DE DISTRITO DE SAN JUAN, HON. CARLOS LLAUGER DÍAZ, JUEZ, demandada.

No. 714.—*Sometido:* Mayo 19, 1930. *Resuelto:* Noviembre 12, 1930.

*Guerra Mondragón & Soldevila,* abogados de la peticionaria; *José S. Alegría,* abogado de la viuda del obrero fallecido.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

La sección 15 de la "Ley de Indemnizaciones por Accidentes del Trabajo," Leyes de 1928, página 631, lee en parte como sigue:

"Cualquiera parte interesada podrá presentar copias certificadas de una orden o decisión de la Comisión Industrial. . . . . ante la corte de distrito del distrito en que ocurrió el accidente solicitando la revisión de éste en el término de diez días después de la notificación. La corte ordenará a la Comisión Industrial la remisión del récord del caso, oirá a las partes en controversia, dictará la decisión pertinente y notificará a las partes. Las decisiones de la corte tendrán el mismo efecto que una sentencia dictada en juicio, pero no se dará apelación contra dicha sentencia."

Después de examinar el récord, en que se incluyó una transcripción de la evidencia aducida ante la Comisión Industrial, la corte de distrito, sin entrar en los méritos del caso, lo devolvió para ulterior investigación por dicho organismo. Al dictar esta orden, el juez de distrito se refirió a una opinión emitida por él en otro caso, *Agapito Alicea, peticionario, v. La Comisión Industrial*, demandada.

En el caso de Alicea el juez de distrito resolvió que tenía la facultad de revisar la prueba practicada ante la Comisión Industrial y de considerar los méritos del caso. Llegó a la conclusión de que la Comisión había atribuído demasiada importancia a cierta divergencia de criterio entre los peritos médicos; que al peticionario no se le había dado una oportunidad suficiente para presentar su prueba, y que la investigación en cuanto a la causa del accidente estaba incompleta.

En aquel caso, la cuestión a ventilar era si una hernia había provenido de haberse caído el obrero de una escalera, o si se trataba de un estado preexistente de prolongada raigambre. Según indicó el juez de distrito, ésta era una cuestión que podía y debía ser determinada definitivamente mediante una investigación ulterior.

En el caso de autos, un número de testigos presenciales declararon respecto a lo que vieron y oyeron al tiempo de la lesión acusada. Todo ese testimonio se pronunció más o menos en el mismo sentido, y no fué contradicho directamente por el de ningún otro testigo. Uno de los testigos dió los nombres de varios otros que podían ser llamados, pero

que no fueron examinados por la Comisión. Todas las circunstancias, sin embargo, tienden a la conclusión de que ese testimonio hubiera sido meramente acumulativo.

La cuestión importante que tuvo ante sí la Comisión fué la de si una infección de la fosa nasal izquierda fué ocasionada por la introducción de aceite, acompañada de un golpe sobre la nariz al ocurrir el accidente, o si provino de un forúnculo de origen independiente.

José Granado Rosario era un mecánico empleado por la White Star Bus Line, corporación que es su propia aseguradora. El estaba debajo de la guagua trabajando con el freno cuando acaeció el suceso. Los circunstantes declararon que cuando él se levantó, se estaba limpiando el aceite de la cara y soplando la nariz. Hubo una emisión de sangre y mucosidad. Por lo menos uno de los testigos oculares dijo que Granado se introdujo el pañuelo sucio para extraer el aceite de la nariz, y que el testigo le advirtió del peligro que corría al hacerlo así. La explicación que entonces dió Granado fué que le había caído dentro de la nariz algún aceite caliente del motor, y que se había dado un golpe en la nariz con una llave inglesa. Murió de septicemia doce días después.

El Dr. Font Suárez, que trabaja en la clínica perteneciente al Dr. Díaz García, médico de la White Star Bus Line, examinó a Granado a los tres días del accidente. Declaró que el lado izquierdo del rostro de Granado, alrededor del ojo y la nariz, estaba inflamado, y que el obrero se quejaba de dolor en la nariz, diciendo que esa situación había existido desde el día anterior; que el testigo halló y descabezó un pequeño forúnculo en la fosa nasal izquierda; y que un forúnculo es producido por la infección del folículo de la raíz de un vello. Interrogado respecto a si tal infección pudo haber sido causada por una quemadura o un golpe en la nariz, el testigo contestó: ''Si hay una herida, desde luego, puede haber infección.'' Después de reiterar la aserción de que el forúnculo fué secuela de un folículo infectado (siendo ésa la causa corriente) el testigo agregó que no podía decir, en este

caso particular, que la infección fuera el resultado de una lesión, porque no había prueba de tal. Preguntado si la penetración de grasa caliente en la nariz podría causar la infección de un folículo, el testigo respondió: "Podrá ocasionar una quemadura."

El declarante también manifestó que no halló rastro alguno de quemadura, y que habría dependido del carácter de la quemadura el que hubiera o no indicios de la misma al tercer día de recibida. Después de algunas otras preguntas sobre el mismo extremo, hallamos lo siguiente:

"Lic. Alegría:—¿Usted declaró antes que en un caso en que se recibiera un golpe en la nariz que produjera una herida de la mucosa eso es suficiente para producir un forúnculo?—R. No; eso puede traer una infección.—P. ¿No puede eso producir un forúnculo?— R. Eso puede producir una infección.—P. ¿Pero el forúnculo que se produce en la nariz se puede formar por eso?—R. Puede formarse un absceso.—P. ¿Quiere decir que ese absceso puede formarse cerca del sitio donde hubo la infección por rotura de la mucosa?—R. Sí, señor."

El Dr. Díaz García, que también era un cirujano del hospital municipal, vió a Granado al ser recluído en el hospital como nueve días después del accidente, y declaró que la inflamación había sido provocada por una pústula o una infección en la fosa nasal izquierda. La historia clínica del caso en el hospital, que parece fundarse en información obtenida de la clínica en que se practicó el primer examen, dice que (es de presumirse que al tiempo de tal examen) había un absceso en la fosa nasal izquierda. Este memorándum fué hecho por un tal "Dr. Cintrón" que no compareció ante la Comisión. El cirujano del hospital también dijo que Granado tenía en la nariz un forúnculo o "nacido" (nacencia) infectado. Al interrogársele si ese resultado pudo ser producido por un golpe, el testigo repuso: "Sí, si este hombre se ha dado un golpe, lo más probable es que se vea la huella del golpe; pero no que en tres días haya desaparecido el golpe o los indicios de quemaduras y haya venido

una infección." Preguntado si la infección pudo haber sido causada por grasa caliente o aceite, contestó: "Yo entiendo que lo que produce el daño en eso es el calor, y lo que produce el calor en el cuerpo es la quemadura, quiere decir que lo que ha debido producir eso es una quemadura, pero no un forúnculo." Acto seguido sobrevino el siguiente coloquio:

"Sr. León Parra:—¿Y si al tratarse de limpiar el aceite él se hubiera hecho una escoriación con la uña, ¿no podía formarse un forúnculo?—R. Si él se hubiera dado una heridita y esa heridita se hubiera infectado. . . Pero lo que ha descrito el Dr. Font Suárez es un forúnculo.—P. ¿De suerte que no es posible? ¿A un individuo que se raspase con la uña limpiándose la nariz no puede formársele un tumor redondo?—R. Un absceso, sí. Todo es posible en medicina. Lo que describió el Dr. Font Suárez es una infección de la base de un pelo.—P. ¿Esa es una suposición de él?—R. No. El vió eso.—P. ¿Es que a mí me parece que él dijo que era lo más probable que lo hubiera producido?—R. Aquí no se reclamó accidente alguno hasta después de muerto el hombre.—Lic. Soldevilla: Suponiendo que este forúnculo hubiera estado en la nariz el día 3 de marzo de 1929, ¿la infección hubiera podido contraerse el día 9?—El lo vió el día 6 y venía con el historial del día anterior haber tenido inflamada la nariz, y la señora de él traía el historial del forúnculo desde el día del accidente."

El Dr. Díaz García no vió a Granado mientras éste permaneció en la clínica. El récord no pone de manifiesto la fuente de su impresión de que la esposa de Granado había suministrado la historia del forúnculo desde el día del accidente. La declaración del Dr. Font Suárez no menciona en forma alguna tal narración. La viuda declaró ante la Comisión que Granado estaba bien en la mañana del día del suceso y a la hora de almuerzo; que al regresar por la noche como a las ocho, él se quejó de dolor en la nariz, la cual estaba inflamada, pidiéndole que lo examinara, lo que ella hizo; que ella nada halló en la fosa nasal, y dijo a su marido que de haber algo tenía que estar muy arriba; que ella nada vió y su esposo no se quejó de pústula alguna; que ella lo acompañó a la clínica, pero que él entró en la sala de con-

sultas solo, y ella no estuvo presente mientras se practicó el examen.

El tercer médico en declarar, el Dr. Leopoldo Figueroa, quien, había oído las declaraciones de los otros dos, dijo que el aceite en la fosa nasal, aunque no esté lo suficientemente caliente para producir una quemadura, puede irrogar una irritación de la membrana mucosa y la formación de un absceso que culmine en septicemia. Este testigo también manifestó que las declaraciones de los otros dos médicos no establecían concluyentemente la existencia de una forunculosis nasal como diagnóstico; que no podía prevalecer tal teoría en ausencia de las tres características de la forunculosis; que la infección podía deberse, por ejemplo, a la presencia de cierto germen (designándolo), caso en el cual el resultado sería un absceso tubular, y no un forúnculo; que en el presente caso no hubo divieso alguno; que la irritación pudo haber sido causada por un rasguño hecho con la uña; que "lo único que podemos decir en medicina es que cada día sabemos menos"; que la existencia de un absceso, de una infección que se ha generalizado, podría comprobarse, pero que la teoría de un forúnculo no había sido establecida; que un golpe produce un traumatismo, una contusión determina una mortificación de los tejidos, la mortificación de los tejidos forma pus, y sobreviene la septicemia a causa de las toxinas producidas por las bacterias cuando éstas pasan al torrente circulatorio; y que una excoriación de la membrana mucosa es suficiente para motivar una infección local.

Es obvio que nuestro estatuto no tiene por mira la celebración de un juicio *de novo* en la corte de distrito. Fuera de esto, no hay restricción alguna sobre los poderes del juez de distrito. Este debe oír a las partes y dictar el fallo correspondiente. La disposición de que esas decisiones "tendrán el mismo efecto que una sentencia dictada en juicio," es significativa. Una sentencia dictada después de celebrarse un juicio, generalmente resuelve un caso sobre sus méritos. Cuando, como en el presente caso, la corte de

distrito tiene ante sí la transcripción taquigráfica de la vista celebrada ante la Comisión y tanto las opiniones de la mayoría como la disidente, emitidas por los distintos miembros de la Comisión, no hay base adecuada para concluir que el juez de distrito no puede revisar los hechos. En tal caso, la resolución de la causa sobre sus méritos es procedente. Bajo tales circunstancias, ninguna otra decisión podría tener el mismo efecto que la sentencia que se dicta ordinariamente después de celebrado un juicio.

Aun si el juez de distrito careciera de facultad para revisar las conclusiones de hecho de la comisión, sin embargo, tendría el poder de escrutar el razonamiento en que se basó la decisión de ese organismo, y de corregir inferencias injustificadas y conclusiones ilógicas, mediante la revocación de un fallo incorrecto.

Los autos del caso de Alicea no están ante nosotros. En el presente, tanto los peticionarios como el patrono estuvieron representados por letrados, y tuvieron amplia oportunidad de aportar toda la prueba que desearon. Difícilmente puede considerarse el récord tan incompleto que requiera una investigación ulterior.

Puede ser que en este caso, al igual que en el de Alicea, la comisión se vió confusa ante la divergencia de criterio de los peritos médicos. De ser así, ése fué un error de apreciación que debió haber sido corregido por la corte de distrito. Esa corte puede tomar conocimiento judicial de las definiciones que aparecen en los diccionarios de tales términos como forúnculo, nacencia y absceso. Con esto no queremos decir que el tema no sea uno propio para ser investigado científicamente. Si cualquiera de las partes más interesadas hubiese deseado ilustrar a la comisión con mayor amplitud sobre el particular, es indudable que se habría proporcionado la oportunidad de llamar a otros peritos médicos como testigos, de haberse solicitado. Ninguna de las partes pidió que se devolviera el caso para ulterior investigación por la comisión, y no hallamos motivo satisfactorio para tal proceder.

La corte de distrito debió haber confirmado o revocado el fallo de la comisión.

*Debe revocarse la resolución apelada.*

El Juez Asociado Señor Texidor no intervino.